IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| KENNETH WREASE, | |
| Plaintiff, | CIVIL ACTION NO.: 2:21-cv-41 |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Antony Saragas ("the ALJ" or "ALJ Saragas") denying his claim for Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision. Doc. 14 at 25. Defendant asserts the Commissioner's decision should be affirmed. Doc. 15 at 23. I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for Period of Disability and Disability Insurance Benefits on September 9, 2018. R. 15.[1] On November 17, 2020, ALJ Saragas held a hearing, at which Plaintiff, who was represented by counsel, appeared and testified via teleconference. Id. Tyra

---

[1] A transcript of the entire proceedings before the Social Security Administration appears at Document Numbers 10-1 through 10-8. Although the transcript is broken into multiple PDF documents, each with its own CM/ECF docketing number, the transcript bears individual page numbers that run sequentially through the entire transcript. Record citations in this Report (identified with "R.") are to the individual transcript page numbers. For efficiency, no reference to the CM/ECF docketing number or the respective PDF page numbers is provided here.

Watts, a vocational expert, also appeared at the hearing. Id. ALJ Saragas denied Plaintiff's claims after the hearing in a decision issued on December 15, 2020. R. 30. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

Plaintiff, born on October 30, 1967, was 48 years old at the time of the alleged onset date and 53 years old at the time of the ALJ's decision in 2020. R. 28. Plaintiff has a high school diploma. R. 39. Plaintiff's past relevant experience was his work as a marksmanship instructor and a food sales clerk. R. 28.

## DISCUSSION

### I. The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits

are immediately denied.  Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he can adjust to other work in the national economy, considering his age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since his alleged onset date, August 20, 2016.  R.17.  At step two,

ALJ Saragas determined Plaintiff had the following severe impairments: multiple joint osteoarthritis; degenerative disc disease; pes planus; plantar fasciitis; epicondylitis; diabetes mellitus; hypertension; migraine headaches; chronic kidney disease; depression; post-traumatic stress disorder; and drug/alcohol abuse in sustained remission.  R.17.  The ALJ also determined Plaintiff had non-severe medical impairments, including irritable bowel syndrome and gastroesophageal reflux disease, which were well-controlled with medication and treatment.  Id.

At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of a listed impairment.  R. 18.  The ALJ found Plaintiff has the residual function capacity ("RFC") to perform light work with the following exceptions: he can stand and walk four hours a day during an eight-hour workday; he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but cannot climb ladders, ropes, and scaffolds; he can have occasional exposure to hazards such as unprotected heights and moving mechanical parts; he can have occasional exposure to temperature extremes; he should not perform commercial driving or work on uneven terrain; he can occasionally use foot controls with both lower extremities; he should work in proximity to restrooms, as in a typical office environment; he can have occasional interaction with co-workers, supervisors, and the public; there can be occasional changes in the workplace environment and work routine; and he should not perform assembly, fast-paced, high production quota work.  R. 19.  At the next step, the ALJ determined Plaintiff could not perform any past relevant work.  R. 28.  The ALJ concluded at the fifth and final step Plaintiff could perform jobs such as a weight recorder, a swatch clerk, and a router, all of which exist in significant numbers in the national economy.  R. 29.

**II.     Issues Presented**

Plaintiff asserts the ALJ's RFC determination is unsupported by substantial evidence because the ALJ: (1) erred in not mentioning the third-party function report from Plaintiff's ex-wife; (2) failed to include Plaintiff's Veterans' Administration ("VA") disability determination and ratings in his report; (3) improperly discredited certain medical opinions; and (4) erred in determining Plaintiff's subjective complaints were not credible.  Doc. 14 at 1.

**III.    Standard of Review**

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, a court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails to either apply correct legal standards or provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.    Whether the ALJ Erred in Not Mentioning the Third-Party Function Report**

Plaintiff argues the ALJ failed to consider a third-party function report submitted by his ex-wife since ALJ Saragas made no mention of the report in his opinion. Doc. 14 at 8. Plaintiff argues this was error, as SSR 96-7p requires consideration of statements from other persons about symptoms and how they affect the individual. Id.

The Commissioner argues SSR 96-7p was superseded by SSR 16-3p and the ALJ is no longer required to refer specifically to the function report as it is a nonmedical source. Doc. 15 at 13, 15. Even if the ALJ was required to consider the function report, the Commissioner argues the error was harmless. Id. at 15.

As an initial matter, SSR 16-3p explicitly states it supersedes SSR 96-7p, applicable for cases after March 28, 2016. SSR 16-3p. Plaintiff filed his application in 2018; thus, SSR 16-3p is the controlling rule. Under SSR 16-3p, nonmedical sources include "public and private agencies, other practitioners, educational personnel, non-medical sources such as family and friends, and agency personnel."

An ALJ is "not required to articulate how [he] considered evidence from nonmedical sources" in the same way as required for medical opinions. 20 C.F.R. § 416.920c(d). An ALJ is

6

not required to "specifically refer to every piece of evidence in [his] decision" so long as the decision is not a broad rejection "which is not enough to enable [a reviewing court] to conclude that the ALJ consider [the claimant's] medical condition as a whole." Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 783 (11th Cir. 2014) (quoting Dyer, 395 F.3d at 1211); see also Cole ex rel. J.G.C. v. Comm'r of Soc. Sec., No. 6:11-CV-1187, 2012 WL 4077233, at *6 (M.D. Fla. Sept. 17, 2012) ("The failure to discuss specific evidence does not mean that evidence was not considered."). Thus, the ALJ did not err in failing to expressly address the third-party function report provided by Plaintiff's ex-wife. And there is nothing indicating the ALJ failed to consider Plaintiff's ex-wife's third-party function report. To the contrary, the ALJ stated he considered "all the evidence" and the "entire record," which necessarily includes the third-party function report. R. 16–17, 19. Indeed, the ALJ discussed various symptoms described in the third-party function report, though he cited Plaintiff's own function report and did not expressly cite to the third-party function report. All of these facts support the conclusion the ALJ adequately considered Plaintiff's ex-wife's third-party function report, and there is nothing before the Court suggesting the ALJ did not consider the report.

Additionally, Plaintiff cannot point to any harm arising from the ALJ's failure to mention (or even failure to consider) Plaintiff's ex-wife's third-party function report because the report was simply cumulative of Plaintiff's own reports and testimony, and the ALJ expressly considered and rejected Plaintiff's own claimed subjective symptoms. This Court will not overturn a decision for an error which "do[es] not affect the parties' substantial rights." Zoslow v. Comm'r of Soc. Sec., 778 F. App'x 762, 764 (11th Cir. 2019) (citing Shinseki v. Sanders, 556 U.S. 396, 407 (2009)); see also Griffin v. Astrue, No. CV411-320, 2013 WL 633049, at *3 (S.D.

Ga. Feb. 20, 2013) ("Harmless error analysis applies where substantial evidence supports the ALJ's conclusions and some legal error occurred that was not case dispositive.").

Here, Plaintiff has failed to show any harm arising from the ALJ failing to mention or consider Plaintiff's ex-wife's third-party function report. In discussing Plaintiff's subjective complaints, the ALJ cited to and analyzed a 2020 function report completed by Plaintiff in which Plaintiff described his symptoms. See R. 20–21. In examining Plaintiff's ex-wife's third-party function report, the Court notes the symptoms reported are essentially identical to the symptoms described in Plaintiff's own report. Compare R. 256–63 (Plaintiff's function report) with R. 248–55 (the third-party function report).[2] The ALJ extensively discussed why the subjective symptoms Plaintiff reported were inconsistent with the medical evidence, and the ALJ explicitly found Plaintiff's testimony unsupported by the record. R. 21–28. The ex-wife's report merely duplicated Plaintiff's subjective complaints, which were appropriately rejected. The ALJ's rejection of Plaintiff's purported subjective symptoms was supported by substantial evidence, and, therefore, the ALJ did not err. The first enumeration is without merit.

**V.    Whether the ALJ Erred by Failing to Address the Medical Evidence Underlying Plaintiff's VA Disability Rating**

Plaintiff argues the ALJ violated his duty to investigate and consider the VA's disability rating prior to determining the weight of that rating. Doc. 14 at 9. Plaintiff acknowledges the

---

[2]    Based on the signature pages of the two reports, it appears Plaintiff completed the third-party function report while his ex-wife completed the disabled person's function report. Compare R. 255 with R. 263. However, it is clear the function report describes Plaintiff's subjective symptoms, and the third-party function report describes Plaintiff's ex-wife's perceptions of Plaintiff's symptoms, regardless of the inconsistent signature pages. The third-party function report is clearly labeled as such on its first page. R. 248. The questions are phrased as asking about a third person, and the answers respond in the third person. See, e.g., R. 249 (Q: "How do this person's illnesses, injuries, or conditions limit his/her ability to work?"  A: "He can't sit long and his back problem, his anxiety stop him from getting a job.") Meanwhile, Plaintiff's function report is also labeled on the first page. R. 256. The questions are phrased as asking about "you," and the answers are in the first person. See, e.g., R. 260 (Q: "List the places you go on a regular basis."  A: "I don't.").

8

ALJ is not required to analyze the VA's decision but argues the ALJ must consider all supporting evidence underlying the agency decision and that includes the disability rating decision itself. Id.; Doc. 16 at 4. The Commissioner argues the ALJ was not required to consider the VA disability rating and, even if the ALJ was required to do so, the error was harmless. Doc. 15 at 15–16.

The applicable Regulations are clear that "[t]he ALJ is under no obligation under the Commissioner's revised regulations to address another agency's rating." D.B. v Comm'r of Soc. Sec., Case No: 4:20-cv-254, 2022 WL 613769, at *3 (M.D. Ga. Mar. 2, 2022) (citing 20 C.F.R. §§ 404.1504, 404.1520b(c)(1)). Plaintiff is mistaken in asserting the ALJ had a duty to obtain and consider the VA's disability rating decision. Doc. 14 at 9. The ALJ only needed to consider "the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that was received as evidence. 20 C.F.R. § 404.1504. The ALJ did just that. ALJ Saragas cites to VA records throughout his opinion, and Plaintiff concedes the ALJ considered the VA records received as evidence. Doc. 14 at 10; see, e.g., R. 25 (concluding Plaintiff's decreased range of motion in his neck at the consultative examiner was not consistent with VA provider findings); R. 26 (citing reports to VA mental providers, x-rays performed by the VA, and a telephonic examination by the VA for Plaintiff's diabetes).

Plaintiff argues the VA rating decision itself should have been considered since it includes detailed information regarding functional limitations. Doc. 16 at 3. But there is no indication the VA rating decision was ever received by the Commissioner as evidence. The applicable Regulations make clear that "a decision by any other governmental agency . . . about whether you are disabled . . . is based on [that agency's] rules" and is not binding on the Social Security Administration. 20 C.F.R. § 404.1504. The ALJ did not err in declining to any analyze

9

the of VA's disability rating, and Plaintiff has not shown the ALJ erred in considering the VA records that were received as evidence or that the ALJ had any duty to obtain or consider the VA rating decision in this case. Finally, even if there were error, Plaintiff has failed to point to any prejudice arising from the purported error. The second enumeration is without merit.

## VI. Whether the ALJ Erred by Disregarding Certain Medical Opinions

Plaintiff argues the ALJ improperly disregarded the medical opinions of Dr. Roth, the psychological examiner, and Dr. Agarwal, the consultive examiner. Doc. 14 at 10–11. Plaintiff argues the ALJ should have stated with particularity the weight given to the various medical opinions. Id. at 10. Furthermore, Plaintiff argues the ALJ had a duty to develop the record where important information is missing and the failure to do so means the Court should remand the case. Id. at 14.

The Commissioner argues the ALJ appropriately considered the medical opinions, as required by the revised Regulations under 20 C.F.R. § 404.1520c, which no longer requires an ALJ to give specific evidentiary weight to certain opinions. Doc. 15 at 6. Even if the ALJ did not apply the correct standard, the Commissioner argues any error is harmless. Id. at 11.

### A. Legal Standard

An ALJ looking at medical opinions "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a); see Works v. Saul, No 4:19-CV-1515, 2021 WL 690126, at *15, 24 (N.D. Ala. Feb. 23, 2021).[3] Instead, "when evaluat[ing] the persuasiveness of medical opinions," the ALJ "will consider

---

[3] On January 18, 2017, the Social Security Administration substantially revised the Regulations governing how the Commissioner considers medical evidence, including medical opinions. See 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). Those revisions apply to claims filed on or after March 27, 2017, and are, therefore, applicable in this case. Compare 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) with 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

those medical opinions . . . using the factors listed . . . the most important factors . . . [being] supportability . . . and consistency." 20 C.F.R. § 416.920c.  The controlling Regulation provides some guidance to ALJs on the "supportability" and "consistency" factors.  20 C.F.R. § 416.920c(c)(1)–(2).  "Supportability" is a measure of how much a medical opinion is supported by objective medical evidence and explanations provided by the medical source giving the opinion.  See 20 C.F.R. § 416.920c(c)(1).  "Consistency" is a measure of how consistent the medical opinion is with evidence from other sources (medical and nonmedical).  See 20 C.F.R. § 416.920c(c)(2).  Opinions which have a high degree of "supportability" and "consistency" should be treated as more persuasive.  20 C.F.R. § 416.920c(c)(1)–(2).

The ALJ must articulate how supportability and consistency "were considered for a medical source's opinion, but an ALJ is not required to articulate consideration of the remaining factors." Anthony v. Kijakazi, CV 120-110, 2021 WL 4304725, at *3 (S.D. Ga. Sept. 3, 2021) (citing 20 C.F.R. §416.920c(b)(2) and Uresi v. Comm'r of Soc. Sec., No. 2:20-CV-367, 2021 WL 2644549, at *4 (M.D. Fla. June 28, 2021)).  The ALJ must "provide sufficient detail concerning the degree to which he finds a medical source's opinion persuasive so that a reviewing court may understand the ALJ's analysis." Works, 2021 WL 690126 at *15 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)); see Jackson v. Soc. Sec. Admin., Comm'r, 779 F. App'x 681, 684 (11th Cir. 2019).  As with all conclusions, the ALJ's conclusions regarding medical source opinions must be supported by substantial evidence in the record.  Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1320 (11th Cir. 2021) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)).[4]

---

[4]  In revising the Regulations to remove the treating source rule, the Social Security Administration explained, "[U]nder the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether *substantial evidence* supports our final decision[.]" Revisions to Rules Regarding the Evaluation of Medical

11

B.     Dr. Roth's Opinion

Dr. Roth performed a consultative psychological evaluation. Dr. Roth opined: Plaintiff has no limitations in remembering and understanding simple and detailed directions in simple unskilled work procedures; Plaintiff has good ability to sustain attention, persistence, and pace; Plaintiff has moderate limitations in his ability to interact appropriately with coworkers, supervisors, and the general public; and Plaintiff has moderate to marked limitations in adapting to change. R. 26. Dr. Roth described Plaintiff as able to regain his composure, focus, and complete tasks adequately during the evaluation. Id.

The ALJ found most of Dr. Roth's opinion persuasive, with the exception of the opinion about Plaintiff having moderate to marked limitations in adapting to change. Id. The ALJ determined Dr. Roth's opinion concerning Plaintiff's adapting-to-change limitation was less persuasive because of the following:

> Dr. Roth noted he had difficulty assessing the claimant's level of distress, as the claimant reported experiencing greater distress than was observed during [the exam]. The undersigned notes the claimant's treatment records do not contain observations or findings to support marked limitations in adapting. The claimant has not required emergency room treatment or inpatient psychiatric treatment because of exacerbation of symptoms when confronted with changes in his environment or routine. As discussed the claimant reported to his mental providers at the VA that he was doing well while he was experiencing the stressors of going through a divorce and moved out of his home.

R. 26.[5]  In his discussion of the persuasiveness of Dr. Roth's opinions, the ALJ uses the term "support" and does not expressly use the term "consistent." Nevertheless, it is clear from the

---

Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (emphasis added). Accordingly, nothing in the revised Regulations alters the requirement the ALJ's decisions be supported by substantial evidence.

[5]     The ALJ actually states "the claimant reported experiencing greater distress than was observed during *the hearing*," but it is clear from a review of the record this is a typographical error. Dr. Roth explicitly noted Plaintiff's report of distress was more severe than what was observed during his (Dr. Roth's) examination of Plaintiff. R. 746. As written, the ALJ suggests, nonsensically, Dr. Roth said Plaintiff claimed greater distress than what Plaintiff showed at the hearing before the ALJ. As the hearing

12

substance of the ALJ's analysis he considered both the consistency and supportability of Dr. Roth's opinions.

As explained above, consistency, as that term is used in the Regulations, refers to how consistent the medical opinion is with evidence from other sources. Although the ALJ did not expressly use the term "consistent," it is clear the ALJ considered how much Dr. Roth's opinion was consistent with other objective medical evidence in the record. The ALJ notes Plaintiff has not needed to have emergency treatment or inpatient treatment as a result of exacerbation of symptoms when he experienced changes to his environment or routine. Additionally, the ALJ points to Plaintiff's reports to medical providers at the VA, in which Plaintiff stated he was doing well despite the stressors of his divorce and moving to a new home. R. 625, 633–34, 665. These records are inconsistent with Dr. Roth's opinion Plaintiff had moderate to marked limitations in adapting to change. The ALJ appropriately discussed the consistency of Dr. Roth's adapting-to-change opinion with other medical evidence in the record.

Supportability, as that term is used in the Regulations, refers to how much a medical opinion is supported by that source's objective medical evidence and explanations. In determining Dr. Roth's adapting-to-change opinion was unpersuasive, the ALJ pointed to Dr. Roth's own notes in which he admits it was difficult to assess the client's level of distress when it came to adapting to change. R. 746. By carefully considering Dr. Roth's explanations for his opinions, the ALJ adequately evaluated the supportability of Dr. Roth's opinions, as required by the Regulations.

The ALJ's overall conclusions are also supported by substantial evidence. Various VA records over the course of two years show Plaintiff, despite facing significant life changes,

---

occurred after the examination, this could not be true. It is clear the ALJ meant Dr. Roth determined Plaintiff claimed greater distress than what Dr. Roth observed during the exam.

13

including a divorce and moving to a new home, managed to adapt well.  See R. 695–96 (a visit from June 2017 in which Plaintiff stated he did not want a divorce or to leave his home); R. 665 (a visit from February 2018 in which Plaintiff said he was in good spirits and looking for a house after he and his ex-wife decided to get a divorce); R. 624–25 (a visit from January 219 in which Plaintiff indicated he was in good spirits despite two pending court cases and being recently attacked by his soon-to-be-ex-wife).  Based on the record, substantial evidence supported the ALJ's conclusion Plaintiff was not markedly limited in adapting to changes.

The ALJ did not err when considering Dr. Roth's opinion, and his conclusions were supported by substantial evidence.  Thus, Plaintiff's challenge to the ALJ's analysis of Dr. Roth's opinion is without merit.

### C.     Dr. Agarwal's Opinion

Dr. Agarwal, a consultative medical examiner, stated in his report, "In a normal work of 8 hours [Plaintiff] is able to sit, stand, walk up to 4 hours with period of rest or 15 min. after walking for 15 min."  R. 25, 736.  The ALJ analyzed Dr. Agarwal's report of the examination, noting Dr. Agarwal performed x-rays of the lumbar spine that came back negative for lumbar disc disease and showed maintained disc spacing.  R. 24.  The ALJ found Dr. Agarwal's opinion about the sit, stand, walk limitation unpersuasive because Dr. Agarwal "does not state if the claimant can sit, stand, and walk each for 4 hours or can perform a combination of [these] activities for 4 hours."  R. 25.  The ALJ concluded the 15-minute limitation was "not supported by the objective record" and was "not consistent with [Plaintiff]'s report of walking 12,000 steps a day for exercise."  Id.

An ALJ must articulate the supportability and consistency of medical opinions.  See 20 C.F.R. § 416.920c.  Here, the ALJ plainly discussed the consistency of Dr. Agarwal's opinion

with other evidence in the medical records.  Not only did the ALJ specifically point out Plaintiff's own report of walking a certain number of steps a day, but he also analyzed Plaintiff's reports to Dr. Agarwal to determine consistency with Plaintiff's previous medical records.  R. 24–25.

The ALJ discussed whether Dr. Agarwal's opinion was supported by objective medical evidence and explanations provided by Dr. Agarwal.  Though he used the word "consistency," the ALJ analyzed Dr. Agarwal's opinion in comparison to the x-ray results Dr. Agarwal took as part of Plaintiff's consultative examination, demonstrating the ALJ was considering the supportability factor.  R. 24.  The ALJ determined Dr. Agarwal's x-rays did not support the limitations Plaintiff described to Dr. Agarwal.  Id.  Further, the ALJ explicitly stated later in his analysis Dr. Agarwal's opinion was not supported by the objective medical records.  R. 25.  These statements demonstrate the ALJ adequately considered supportability.  By carefully considering the medial evidence Dr. Agarwal used as the basis for his opinion, the ALJ adequately evaluated the supportability of Dr. Agarwal's opinion, as required by the Regulations.

Plaintiff argues the ALJ should not have disregarded Dr. Agarwal's opinion due to ambiguity in Dr. Agarwal's opinion about the 4-hour sit/stand/walk limitation.  Doc. 14 at 11.  Plaintiff asserts Dr. Agarwal's opinion clearly meant Plaintiff could sit, stand, and walk (in combination) for only up to 4 hours total in an 8-hour workday, since any other interpretation would imply an unrealistic, 12-hour workday.  Doc. 16 at 5.  This argument is unconvincing.  Dr. Agarwal's opinion, as written, could reasonably be construed to mean Plaintiff could not perform any one of three actions—sit, stand, or walk—for more than 4 hours in a day (i.e., Plaintiff could not sit for more than 4 hours a day, could not stand for more than 4 hours a day, and could not walk for more than 4 hours a day).  Dr. Agarwal's opinion could also be construed to mean

Plaintiff could not perform a combination of sitting, standing, and walking for more than 4 hours in the day.  Thus, the ALJ reasonably concluded the limitation was ambiguous.

However, even if the ALJ should not have concluded the limitation was ambiguous, the error was a harmless one.  An error is harmless if the error does not "effect the judge's ultimate determination."  Hunter v. Comm'r of Soc. Sec., 609 F. App'x 555, 558 (11th Cir. 2015) (citing Diorio v Heckler, 721 F.2d 726, 728 (11th Cir. 1983)); see also Sarli v. Berryhill, 817 F. App'x 916, 919 (11th Cir. 2020) (holding ALJ committed harmless error in failing to state the weight he gave to certain medical opinions because the failure would not have affected the ultimate outcome of the ALJ's decision).  There is no harm in the ALJ's finding Dr. Agarwal's sit/stand/walk opinion was unpersuasive, because the ALJ ultimately adopted a 4-hour limitation for standing and walking in Plaintiff's RFC.  Plaintiff has also failed to show how adopting Dr. Agarwal's proposed limitation, as construed by Plaintiff, would have impacted the ALJ's disability determination in any way.

The ALJ's overall conclusions are also supported by substantial evidence.  Plaintiff reported he walked 12,000 to 13,000 steps a day for exercise, undercutting his assertions he needs to take regular breaks when walking.  R. 414.  Additionally, records from several medical visits over a period of time indicated Plaintiff was not experiencing serious back pain and he had a normal appearing musculoskeletal system.  R. 503 (May 2018 visit showing physical pain was a 0 out of 10); R. 515 (May 2017 visit showing Plaintiff was experiencing no back pain); R. 522 (February 2017 visit showing Plaintiff experiencing no back pain); R. 523–24 (showing normal cervical, thoracis and thoracolumbar spine).  Thus, there was substantial evidence to support the ALJ's decision to find Dr. Agarwal's opinion was unpersuasive.

The ALJ did not err in considering Dr. Agarwal's opinion, and his conclusions were supported by substantial evidence. As the Court concluded the same for Dr. Roth's opinion, I find the third enumeration of error to be without merit.

### VII. Whether the ALJ Erred by Discrediting Plaintiff's Subjective Complaints

Plaintiff argues the ALJ improperly discredited his subjective complaints of pain. Doc. 14 at 13. Plaintiff asserts the ALJ arbitrarily picked facts from the medical evidence to support his conclusion without articulating reasons for discrediting that evidence. Doc. 16 at 6–7. The Commissioner argues the ALJ properly identified multiple reasons supported by substantial evidence for determining Plaintiff's subjective complaints were not supported by the record. Doc. 15 at 19.

In considering a claimant's subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)  A court "is required to uphold the Commissioner's determination regarding subjective complaints if it is supported by substantial evidence." Linnear v. Kijakazi, 1:21-cv-98, 2022 WL 1493563, at *4 (S.D. Ga. May 11, 2022) (citing Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980)).

Here, the ALJ appropriately considered Plaintiff's subjective complaints and found the severity of those complaints was unsupported by the objective medical evidence. The ALJ discussed a summary of Plaintiff's subjective complaints from his Disability Report, his 2019 and 2020 Function Reports, and testimony at the hearing. R. 20–21. The ALJ then discussed the

objective medical evidence in the record and determined that evidence did not support the severity of Plaintiff's reported subjective symptoms.  R. 21.

Plaintiff argues the ALJ arbitrarily cherry-picked facts to support his conclusion without articulating specific reasons for crediting some evidence while discrediting others.  Doc. 14 at 13.  As an example, Plaintiff points to the ALJ's determination Plaintiff's claim he needed a cane to walk was not supported by objective medical evidence.  Id. at 14.  Plaintiff argues the record was full of references to Plaintiff using a cane but ALJ Saragas improperly deemed this allegation unsupported through cherry-picking medical evidence favorable to his conclusion.  Id.  This argument is unconvincing.  "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the plaintiff's] medical condition as a whole."  Dyer, 395 F.3d at 1211.  Here, the ALJ considered Plaintiff's medical condition as a whole—the ALJ, in analyzing medical records, noted when Plaintiff did or did not use a cane.  See, e.g., R. 21 (noting VA records from December 20, 2016, stating Plaintiff reported using a cane); R. 22 (noting Winn Arch visit records, where Plaintiff alleged lower back pain, from February 27, 2017, have no indications about Plaintiff using a cane).  The ALJ did not cherry-pick certain records to support his conclusion.  Rather, the opinion shows the ALJ weighed the available evidence in the record and concluded evidence did not support the severity of Plaintiff's reported subjective symptoms.

The ALJ's conclusions are supported by substantial evidence.  As the ALJ indicated, Plaintiff's complaints of memory and concentration issues were belied by his mental examination, which showed intact memory and alert disposition.  R. 21, 440.  Plaintiff had several other mental examinations in which he exhibited good spirits, despite extreme life

changes and stressors.  R. 21, 625, 633–34, 665.  As for Plaintiff's physical complaints, the ALJ considered Plaintiff's complaints of near daily headaches in comparison to the normal MRI brain scan.  R. 21, 442.  Though Plaintiff reported serious pain and the need for a cane, an examination of his musculoskeletal system and his extremities had no abnormalities to justify that pain.  R. 21, 511.  Substantial evidence supported the ALJ's determination the objective medical evidence did not support the severity of Plaintiff's reported subjective symptoms.

For the above reasons, I find the fourth enumeration to be meritless.  Since none of the enumerations require remand, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 24th day of August, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA